**Mark Owen McGUIRE, Plaintiff–Appellant,**

v.

**Wayne ESTELLE, Warden, Defendant–Appellee.**

No. 87–2522.

United States Court of Appeals, Ninth Circuit.

Nov. 23, 1990.

Before SCHROEDER and WIGGINS, Circuit Judges, and STEPHENS,* District Judge.

### ORDER

The panel has voted to deny the petition for rehearing and reject the suggestion for rehearing en banc. Judges Kozinski and Trott would grant the suggestion for rehearing en banc.

The full court has been advised of the suggestion for an en banc. An active judge requested a vote on whether to rehear the matter en banc. The request failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

KOZINSKI, Circuit Judge, with whom Circuit Judge TROTT joins, dissenting from the order rejecting the suggestion for rehearing en banc:

Six month old Tori McGuire died in a hospital emergency room, the victim of appalling internal injuries: her liver was split in half, her pancreas was lacerated and split apart, her lower right lung and the

California, sitting by designation.

large vein from her heart were damaged, and part of her large intestine was lacerated. No, little Tori was not the victim of a hideous automobile accident; nor had she been extracted from the rubble of an earthquake. She had been beaten to death. Her lifeless body, with dozens of contusions on her chest and abdomen, was brought to the hospital by her parents who claimed they didn't know what could have happened to her. Perhaps, the father said, "the baby fell off the couch" or maybe "some Mexicans" broke in and abused her while he was out of the room. Not taken in by these transparent falsehoods, the state brought charges against the father, Mark McGuire. A state jury convicted him of second degree murder; the conviction was affirmed on appeal.

A panel of this court now overturns the conviction, quite possibly forever. In so doing, it not only reaches a result that is contrary to simple justice and common sense, but does so in a way that will seriously interfere with the authority and autonomy of the state courts in many other criminal proceedings. Most fundamentally, the panel overturns the state conviction because it disagrees with the state court on questions of *state* law.[1] Worse, the panel punishes the prosecution for introducing what the court deems to be unnecessary evidence of the defendant's intent, even though intent is clearly an element of the crime with which McGuire was charged. Finally, the panel misapplies the teachings of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), by failing to consider "the entire record prior to reversing a conviction for constitutional errors that may be harmless." Id at 509 n. 7, 103 S.Ct. at 1981 n. 7.

This opinion is markedly out of step with the law of the Supreme Court and this

circuit governing these sensitive and important issues. While en banc procedures are cumbersome and time consuming, such considerations ought not deter us from maintaining uniformity in the law of the circuit, as well as correcting an obvious miscarriage of justice. Because my colleagues' decision not to take this case en banc lets stand what I consider to be a wholly unacceptable precedent, I must respectfully dissent.

Discussion

Tori McGuire's short life was the type of horror no sentient being should have to endure. In addition to the ghastly injuries that caused her death, the doctors who examined her discovered some earlier injuries—rectal tearing that was at least six weeks old and several partially healed rib fractures that were approximately seven weeks old. The prosecution introduced evidence of these earlier injuries, and the trial court instructed the jury as to the inferences it could draw therefrom. This evidence and these instructions lie at the heart of the panel's decision to overturn the conviction. A dispassionate review of the state court proceedings, however, reveals that no error at all was committed, much less an error of constitutional dimensions, and that the disputed evidence was, in any event, not prejudicial given the overwhelming evidence of McGuire's guilt.

A. *The Panel Second–Guessed the State Courts on Questions of State Law*

This is not an appeal from a federal criminal conviction; it is a state habeas corpus case. Our function is limited to determining whether the petitioner's constitutional rights were violated. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir.),

---

1. A similar concern was raised by *Blair v. McCarthy*, 881 F.2d 602 (9th Cir.1989), cert. granted, —— U.S. ——, 111 S.Ct. 39, 112 L.Ed.2d 16 (1990), vacated as moot and remanded —— U.S. ——, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990), where the first question presented was: "Has court below improperly and unduly expanded

scope of federal habeas corpus relief by granting such relief in absence of any federal violation on sole basis of alleged violation of state procedural rule plus finding that it is 'reasonably probable' that different result would have occurred in absence of state law error?"

cert denied —— U.S. ——, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.1985), cert. denied 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986). In making that determination, we do not review issues of state law, such as evidentiary rulings; we are bound by the state courts' interpretations of the law entrusted to them. The panel disregards this limitation entirely and overturns Mark McGuire's conviction because it disagrees with the way the state court resolved questions of state law concerning the admissibility of evidence and the wording of jury instructions.

On the evidentiary question, the state trial court admitted proof of prior injuries for three separate reasons, one of them being that it tended to establish that Tori was a battered child, pursuant to a theory known as the "Battered Child Syndrome." The state court of appeal affirmed:

> [P]roof of Tori's "prior injuries" tending to establish the "battered child syndrome" was patently proper.

*People v. McGuire*, No. AO17800, at 7 (Cal. App. Jan. 15, 1985), citing and discussing *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984); *People v. Jackson*, 18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971); and *Landeros v. Flood*, 17 Cal.3d 399, 131 Cal.Rptr. 69, 551 P.2d 389 (1976). Our panel flatly disagrees with this determination:

> The trial court incorrectly admitted the evidence *pursuant to California law* allowing past injury evidence to establish the "Battered Child Syndrome." The Battered Child Syndrome allows proof of past injuries to prove the child's present injuries did not occur accidentally. *See People v. Jackson*, 18 Cal.App.3d 504, 506, 95 Cal.Rptr. 919, 921 (1971); *Landeros v. Flood*, 17 Cal.3d 399, 409, 551 P.2d 389, 393, 131 Cal.Rptr. 69, 73 (1976).

902 F.2d at 754 (emphasis added).

What can one possibly say about this? The panel not only expressly states that the state court erroneously admitted the evidence "pursuant to California law," but it relies on two of the same cases that the state court of appeal relied on in reaching the opposite conclusion. Until reading the panel's opinion, I had thought the federal courts were bound by state court interpretations of the state rules of evidence. Apparently, however, the panel has now declared open season on state court evidentiary rulings in the Ninth Circuit.

The panel makes precisely the same mistake when it concludes that "[s]ubsection 3 of the [prior bad acts] instruction is erroneous." 902 F.2d at 755. The panel's only explanation for this conclusion appears in a footnote:

> It appears that the trial court's erroneous instruction was the result of an incorrect reading of CALJIC 2.50 (1979 Revision). This standard jury instruction has been clarified to avoid the misunderstanding which occurred here. *See* CALJIC 2:50 (1987 Revision).

Id at 755 n. 2. Once again, the panel cites only state law in support of its conclusion that the state courts committed error.

The panel does ultimately conclude that "the faulty instruction considered along with the admittance of the prejudicial evidence 'so infected the entire trial that the resulting conviction violate[d] due process.'" 902 F.2d at 755 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). This reference to the due process clause does not repair the damage done by the panel's earlier analysis. The problem is that, in order to conclude that there was a due process violation, one must first determine that the state trial court erred. The panel made that initial determination by relying almost exclusively on state law, which it reads in a way directly contrary to the state court's reading.[2]

---

**2.** I say *almost* exclusively because the court does sprinkle in citations to federal law, particularly the Federal Rules of Evidence. See, for example, 902 F.2d at 754 (citing FRE 404(b) and *United States v. Lewis*, 837 F.2d 415 (9th Cir.), cert. denied 488 U.S. 923, 109 S.Ct. 304, 102

L.Ed.2d 323 (1988)); id at 755 (citing FRE 404(a) Advisory Committee note and *United States v. Green*, 648 F.2d 587, 593 (9th Cir. 1981)). The Federal Rules of Evidence, the Advisory Committee notes, and federal criminal cases are, of course, wholly irrelevant to a state

**B. Evidence of Intent was Proper and Necessary**

In concluding that the evidence of prior injuries was improperly admitted, the panel suggests that the evidence was not relevant. Id at 754. As discussed above, the panel had no business second-guessing the state courts on a question of state law. Having started down this path, however, the panel makes a collateral error, one with grave constitutional implications.

As the panel recognizes, evidence is admitted pursuant to the Battered Child Syndrome theory to prove that the death was not accidental. Id. If the child has suffered a series of injuries as the result of child abuse, this tends to make it less likely that the injury in question resulted from a mishap. *People v. Jackson*, 18 Cal.App.3d 504, 507, 95 Cal.Rptr. 919, 921 (1971). The panel concludes that the evidence of prior injuries was irrelevant because "in the instant case, no claim was made that the child died accidentally." Id. According to the panel, the only issue at trial was *who* killed Tori, not whether the killing was intentional.

This passage in the panel's opinion has serious implications: It suggests that due process may be violated by the admission of evidence which clearly goes to an element of the offense charged if it turns out that the defense does not put that particular element in issue. This reasoning, if it stands as the law of the circuit, will present state prosecutors with an intractable problem: Just how are they to know whether the defendant intends to put a particular element of the crime in issue? After all, the prosecution must go first and

bears the burden of establishing every element of the crime beyond a reasonable doubt—including, for second degree murder, malice aforethought, Cal. Penal Code §§ 187, 189 (West 1988). If the prosecution decides not to present proof of any element of the crime on the theory that the defense will not put that element in issue, the defendant automatically becomes entitled to a directed verdict of acquittal. James W. Moore and Jo D. Lucas, 5A *Moore's Federal Practice* ¶ 50.02[1] at 50-16.1 to 50-17 (2d ed. 1990). The simple reality is that, in a criminal case, *every* element of the crime is in issue; the defense is free to sit back and see how the prosecution's case shapes up, and then focus its attack where the prosecution is weakest.

The panel's insistence that intent was not an issue in the case is contradicted not only by elementary principles of criminal procedure, but by the record in this case as well. As the panel recognizes, McGuire at one time claimed that the baby was injured when she fell off the couch. 902 F.2d at 751. He later suggested that "maybe some Mexicans came in while I was upstairs." Id. How on earth was the prosecutor to know that McGuire would not raise one of these defenses when his turn came to put on evidence? [3] More fundamentally, if the prosecutor decided to play it safe by introducing evidence in addition to the fatal injuries to prove that the death was not accidental, how can we say that the evidence was irrelevant? For the panel to look at the evidence after the case was closed and say that the prosecutor was too cautious in proving every element of the offense is nothing but 20/20 hindsight.[4]

---

habeas case, where the only issue is whether the trial violated constitutional norms. The panel's opinion in this case could well be construed as giving the Federal Rules of Evidence a constitutional cast. See id at 755.

**3.** Indeed, early in the trial the prosecutor advised the court that he anticipated the defense would rely primarily on the "some Mexicans" theory, with "try[ing] to hang it on momma" a less likely alternative. Reporter's Transcript on Appeal, *People of the State of California v. McGuire*, H 3748 (RT) 213–14 (Book II).

**4.** As it turns out, the defense *did* raise the issue of intent, and very vigorously. Defense counsel objected to a jury instruction on second degree murder, stating "I don't think there is evidence of intent." RT 562 (Book V). She requested an involuntary manslaughter instruction, stating "my contention is that whoever killed the baby or hit the baby had no malice, had no intent to kill the baby." RT 619. With the agreement of both sides, the court instructed the jury that "[t]he unintentional killing of a human being is excusable and not unlawful when committed by accident," and that "[t]he burden is on the Prosecution to prove beyond a reasonable doubt that

What are state prosecutors in the Ninth Circuit supposed to do when presented with a situation such as that here? On the one hand, they face the possibility of a directed verdict or unfavorable jury instructions if they fail to prove an element of the case that somehow seems "obvious." On the other hand, under today's precedent, they face the possibility that a federal court—with the benefit of hindsight—will conclude that the evidence was not really necessary because that particular element of the crime was not contested by the defense. It is obvious that the McGuire prosecutor could not have guarded against this type of whipsaw; more troubling is that, even with today's precedent in hand, no prosecutor will know when to withhold evidence or when to include it until he sees the defendant's evidence, by which time it will be too late. In common parlance, this is known as a Catch–22.

## C. Panel's Harmless Error Analysis is Deficient

It is well established that errors, even constitutional ones, do not warrant overturning a state conviction unless it is determined that the errors are not harmless. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Except where the error is so fundamental that it is deemed harmful per se, which is not the case here, the federal court must examine the *entire* state court record to determine whether the jury would have reached a different conclusion absent the error. *United States v. Hasting*, 461 U.S. 499, 509 n. 7, 103 S.Ct. 1974, 1981 n. 7, 76 L.Ed.2d 96 (1983).

The panel here speaks the language of harmless error analysis but fails to perform the tasks associated therewith. The sum and substance of the panel's harmless error "analysis" is the following: "Although there was evidence suggesting McGuire's guilt, this evidence was certainly not overwhelming." 902 F.2d at 755. The panel does not state that it has reviewed, or even seen, the state court record; it does not discuss the evidence supporting guilt; and it does not analyze how the trial would have played out had the perceived errors been eliminated. Harmless error analysis that is so utterly devoid of analysis is no better than no harmless error analysis at all. At a bare minimum, it seems to me, the panel must represent that it has ordered the state court record, looked at it and undertaken the type of review mandated by the Supreme Court.

Quite frankly, it is impossible to review the record in this case and understand how the panel reached its conclusion. Take, for example, the error perceived by the panel as to the admission of the evidence under the Battered Child Syndrome. Even if the panel were correct in concluding that the evidence was improperly admitted for this purpose, *it does not matter*. The trial court found the evidence of prior injuries admissible for three distinct purposes: (1) to establish the existence of Battered Child Syndrome; (2) to show that McGuire had committed similar prior bad acts;[5] and (3) to impeach Mrs. McGuire's testimony that Mr. McGuire was kind to his daughter. RT 573–75 (Book V), 757. The state court of appeal found the evidence admissible on

the homicide was not excusable." RT 762. During her closing argument, defense counsel argued that the prosecution had failed to establish intent: "Involuntary manslaughter ... is an unlawful killing of a human being where there is no intent to kill and no malice. That is what we have here, if anything." RT 720. See also RT 718–19. In McGuire's motion for a new trial after the verdict came in, defense counsel asserted that the trial court had erroneously failed to instruct the jury on the requirement of specific intent. Clerk's Transcript on Appeal, *The People of the State of California v. McGuire*, H 3748 (CT) 155. Thus, while the panel appears to have labored under the misapprehension that

McGuire had conceded or stipulated to intent, defense counsel was well aware of the state's burden of proof as to McGuire's state of mind, and pressed the issue forcefully.

**5.** The trial court treated Battered Child Syndrome and prior bad acts as separate evidentiary categories; it may be more accurate to say that evidence of Battered Child Syndrome is a subset of evidence of prior bad acts. For our purposes it makes no difference: A finding that evidence is inadmissible to prove Battered Child Syndrome says nothing about whether the evidence may be admitted for the broader purpose of showing prior bad acts.

the first of these grounds, and so did not reach the other two. *People v. McGuire*, No. AO17800, at 5–7 (Cal.App. Jan. 15, 1985).

Where a trial court admits evidence for three independent reasons, and we find one of them insufficient, our job is hardly done.[6] All evidence is admissible for some purposes but inadmissible for others; we could reverse convictions any time we liked were we to focus on one purpose exclusively. Here, the panel did not find that the evidence was inadmissible on the other two grounds; therefore, it is bound to assume that the evidence would have been admitted in any event. In light of the indisputable record on this point, I fail to see how McGuire suffered *any* prejudice from the alleged error regarding admission of evidence of the Battered Child Syndrome, much less a denial of due process.

But there is more. Even were we to assume, with the panel, that admission of the evidence was prejudicial error, the panel was required to decide whether the jury would have convicted anyway. See *United States v. Hasting*, 461 U.S. at 510–11, 103 S.Ct. at 1981–82. A determination on this issue required the panel to weigh the prosecution's case, the likely effect of the wrongfully admitted evidence and the likelihood that the jury would have come to a different result. A review of the record leads to only one conclusion: The jury would have reached exactly the same verdict regardless of the errors perceived by the panel.

First, the record discloses that the prosecution's case was very strong indeed. In weighing the strength of that evidence, it must be kept in mind that there were only two plausible theories of the case: that the father abused Tori or that the mother did; no one else had access to the baby immediately prior to her death. While the 1500 page trial transcript contains a good deal of testimony establishing that the father did it, perhaps the strongest piece of evidence

is the testimony of several witnesses who overheard a conversation between Mr. and Mrs. McGuire at the hospital while the couple was waiting to learn Tori's fate:

> While Tori was being treated, and McGuire and his wife were seated together in a hospital waiting room, Mrs. McGuire several times insistently asked "what really happened?" McGuire replied that he "didn't know," and that he "guessed" the baby fell off the couch; his response was always the same. Finally Mrs. McGuire said, "You are responsible," to which he apparently made no reply.

*People v. McGuire*, No. AO17800, at 3 (Cal. App. Jan. 15, 1985).

This conversation makes no sense at all unless it was the father who abused the baby. Had the baby been alone with the mother at the time she suffered the injuries, as Mrs. McGuire claimed at trial, one would have expected the accusations at the hospital to point entirely the other way. Not only did McGuire fail to question or accuse his wife, he lamely suggested the baby "fell off the couch" and did not protest her accusation that "you are responsible." Short of a videotape of the crime, it's not clear what better evidence the prosecution might have presented.

The fact is, child abuse cases are inherently difficult to prove: the evidence is usually circumstantial and often ambiguous; eyewitnesses seldom come forward because of family considerations; and the victims often are dead or too young to speak. See, for example, *United States v. Boise*, 916 F.2d 497 (9th Cir.1990). It is rare indeed to have a case like this one, where the defendant makes what is tantamount to a spontaneous confession of his guilt. When this conversation is viewed in the context of all the other evidence presented to the jury, see *People v. McGuire* at 2–4, one must conclude that

**6.** That the state court of appeal only considered one ground for admission is not, of course, dispositive. Having found the evidence admissible on one ground, the court of appeal had no need to examine whether the evidence was admissible on other grounds as well. To find the

evidence inadmissible—and so highly prejudicial as to constitute a due process violation—we must make sure that it is not in fact admissible on *any* of the grounds relied on by the trial court.

the prosecution's case was extremely strong.

Second, the prejudice flowing from any error would have been minimal. If I understand the panel's rationale correctly, it is that the prosecution failed to sufficiently prove McGuire's connection to the earlier acts of child abuse. Even if that were true—which it clearly is not [7]—how was the defendant prejudiced? Evidence of the earlier abuse could *only* harm the defendant to the extent the jury was convinced he committed those acts. If the jury was in doubt, or believed that someone else (for example, Mrs. McGuire) committed the bad acts, its outrage over them would not have been directed at Mark McGuire.

Finally, it is highly unlikely that, absent the error, the jury would have reached a not guilty verdict because to do so it would have had to adopt the defense's alternative theory—that the mother did it. Mrs. McGuire's "confession," made only after she was granted immunity and had the luxury of attempting to save her husband at no risk to herself, is halting and tentative, marked by evasion and lapses of memory, RT 333–39, 341–42, 351–58, 364, 385. It is also internally inconsistent, RT 353–56; contradicted by her earlier statements to the police and at the preliminary hearing, RT 370–75, 410–11, and by Mr. McGuire's own statements to the police, RT 209–10 (Book II), 251 (Book III); and inconsistent with the weight of the medical evidence.[8] The jury deliberated for three days and had extended passages of the trial transcript read back to it, including large portions of Mrs. McGuire's testimony. RT 254A (Book I), 777. This jury was clearly not inflamed by passion. McGuire got no worse than he deserved.

It is this type of inquiry, or something akin to it, that the panel was required to pursue under *Chapman*. Its unsubstantiated assertion that the evidence against McGuire "was certainly not overwhelming" simply does not do the job.

## D. *Reprosecution of McGuire may be Precluded*

When a federal court grants a writ of habeas corpus, the state normally has the option of retrying the defendant. This is not the case, however, when there is a determination that the prosecution failed to meet its burden of proof on any element of the offense; under those circumstances, retrial is barred by the double jeopardy clause. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

While the point is not entirely free from doubt, the opinion contains statements that could well preclude retrial of McGuire. Specifically, the panel casts aspersions on the prosecution's case by stating that "only the barest threads connect McGuire to the crime." 902 F.2d at 755. Worse still, the

7. The record contains ample evidence from which a rational jury could conclude that McGuire had been the perpetrator of the earlier injuries:

—Mrs. McGuire's statements to Detective Gillis to the effect that, when she bathed Tori, she noticed the child had bruises on her body. When asked how Tori might have gotten those bruises, Daisy responded:
McGuire: I don't really know, you know, I am not the only one who is taking care of her.
Gillis: Well, who else is taking care of her?
McGuire: My husband, too, takes care of her. RT at 371.
—Testimony by a neighbor "that she had observed McGuire pick up the infant by 'one of her arms.' She had also seen him, when the baby was crying, roughly pinch her cheeks together, and do other 'bad things.' Mrs. McGuire, the witness said, was a 'very caring mother' toward Tori, who was never seen to 'abuse the child' in any way."
*People v. McGuire*, No. AO17800, at 4 (Cal. App. Jan. 15, 1985).
—The fact that one of the injuries—rectal tearing—is sexual in nature, and of a type more likely made by a man than a woman.

8. Mrs. McGuire claimed to have killed the baby some time in the afternoon, "[a] long time" before her husband returned home. RT 353; *see also* RT 348; *but see* RT 356 ("I beat my child when he, shortly before he comes home on that evening."). The infant most likely died within minutes of having been beaten. RT 139–40 (Book II). Yet when the McGuires took the baby to the hospital at nine in the evening, RT 87 (Book II), the doctors believed they had a chance of resuscitating the child because irreversible brain swelling had not yet begun, indicating that her death was very recent. RT 86, 98–99, 169–71 (Book II).

panel characterizes the state's evidence as suggesting no more than "mere shadows of guilt which *leave ample room for reasonable doubt.*" Id at 756 (emphasis added).

It is entirely possible that the state courts on remand will read these passages as holding that the prosecution failed to introduce sufficient evidence to meet its constitutional burden of establishing guilt beyond a reasonable doubt. Certainly it would be difficult to come up with language more clearly conveying this idea than that used by the panel. If the state court *does* construe the panel's opinion as precluding a retrial, there will be no possibility of correcting the error. Once McGuire is released, the prosecution has no mechanism for coming into federal court to complain, as the state is not entitled to collaterally attack the state judgment.

### Conclusion

The panel has overturned a state conviction, and has done so in a manner that seriously and unjustifiably interferes with the authority of the state courts, hamstrings state prosecutors and may result in the permanent release of a defendant who was justly and properly convicted of a heinous crime. We make a grave mistake by failing to take the case en banc to correct these errors and set the law of the circuit back on course.