**Craig Thomas BATES, Petitioner–Appellant,**

v.

**Gary R. McCAUGHTRY, Warden, Waupun Correctional Institution, Respondent–Appellee.**

No. 89–3195.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1991.

Decided May 30, 1991.

See also, 147 Wis.2d 878, 433 N.W.2d 674.

Patrick Palace, Law Student, argued and Allen E. Shoenberger, Loyola Law School, Chicago, Ill., for petitioner-appellant.

Jerome S. Schmidt, Asst. Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for respondent-appellee.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Until recently Wisconsin treated "endangering safety by conduct regardless of life" as a felony. Wis.Stat. § 941.30. The law provided: "Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony." The statute has three ambiguities. How close to the brink is "imminently" dangerous? What mental state is "depraved"? How much risk-taking shows that the defendant acted "regardless" of life? Reasonable persons can and do disagree in answering these questions. Wisconsin amended § 941.30 in 1987 to promote understanding.[†] Craig Thomas Bates was convicted of conduct that occurred before this amendment.

At about 2:30 a.m. of November 19, 1985, officer Alan Kasinski clocked Bates doing 43 miles per hour in a 30 mph zone of Highway 11 in Sturtevant, Wisconsin. Bates pulled over and stopped at the officer's command but shortly took off again, heading east toward Racine at 95 mph. Kasinski gave chase; officer Wheeler joined the pursuit after Bates and Kasinski passed him at high speed. Bates passed intersections without slowing down. Highway 11 is a four-lane road; Bates overtook two other cars abreast of each other going east. Again Bates did not slow down. Just as Bates was about to plow into these cars, one pulled off the road to the right (going over the curb) and the other swerved to the left, into the westbound

---

[†] The new law reads: "(1) Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class D felony. (2) Whoever recklessly endangers another's safety is guilty of a Class E felony."

lanes. Bates split them, still at 95 mph, straddling the lane boundary. Officer Kasinski drove to the far left, passing the other cars in the curb-side lane of westbound traffic. Before either Kasinski or Wheeler could catch up, Bates turned left. His car fishtailed, and the rear struck a lamp post. The officers won the ensuing footrace. Bates was convicted of fleeing a police officer, of operating a vehicle without the owner's consent, and of endangering safety by conduct regardless of life. This collateral attack challenges only the conviction under § 941.30, which supports five of the eight years' imprisonment Bates received.

Two decisions of the Supreme Court of Wisconsin discuss the application of § 941.30 to high-speed driving. *Wagner v. State*, 76 Wis.2d 30, 250 N.W.2d 331 (1977), holds that engaging in a drag race at 11:00 p.m. did not violate the law because not "imminently" dangerous. This term includes "conduct inherently and consciously dangerous to life [but] not such as might casually produce death by misadventure", the court wrote. 76 Wis.2d at 38, 250 N.W.2d at 336. Although one of the cars killed a pedestrian, the court thought it important that the road initially looked deserted, and the driver swerved when he saw the pedestrian. *Balistreri v. State*, 83 Wis.2d 440, 265 N.W.2d 290 (1978), in contrast, held that driving 60 mph in downtown Milwaukee at rush hour is imminently dangerous, although it reversed the conviction on finding that the driver's mental state was not "depraved". Before the collision the driver flashed his lights, tooted his horn, and slowed to 10 mph. Because "[t]hese actions show some regard for the life of others", the state lost; only acts "devoid of regard for the life of another" satisfy the depravity requirement, the court explained. 83 Wis.2d at 457–58, 265 N.W.2d at 298.

Wisconsin's appellate court concluded that Bates' conduct was "imminently" dangerous and evinced a "depraved" mind. *State v. Bates*, 147 Wis.2d 878, 433 N.W.2d 674 (Ct.App.1988) (unpublished order). Although "speeding alone does not constitute conduct imminently dangerous to life if the manner in which it is done does not evidence a conscious disregard for life … speeding in an automobile where there is pedestrian or vehicular traffic can be imminently dangerous." 1988 WL 136064, *2, 1988 Wis.App. LEXIS 919 *5. The court concluded that it was the known presence of other cars in Milwaukee, and not the difference between rush hour and 11:00 p.m., that marked the line between *Balistreri* and *Wagner*. Bates saw the cars ahead of him yet continued speeding. Bates' action was "depraved", the court concluded, because he put the burden of avoidance on the other drivers. If they had not acted (at risk to themselves), Bates would have collided with them. In *Balistreri*, by contrast, the driver slowed down and tried to avoid the collision. This contrast convinced the state court that Bates had no regard for the welfare of the other drivers and so was "depraved" within the meaning of § 941.30.

■ Bates wants the federal courts to hold that his case is more like Wagner's than like Balistreri's. The district court sided with the state court and denied the petition for a writ of habeas corpus. We conclude that the application of § 941.30 presents no federal issue at all. Bates does not contend that he lacked fair warning that his conduct was illegal—whether because § 941.30 is vague, or because it was applied to him in a surprising way, see *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); cf. *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Bates stakes his all on *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires federal courts to ensure that the state presented enough evidence to permit a reasonable juror to find guilt beyond a reasonable doubt. *Jackson* prevents the state from evading the burden of persuasion established by the due process clause of the fourteenth amendment. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Wisconsin did not try to alter the burden of persuasion. The facts were largely stipulated at trial, and in this court the parties agree on them. The

dispute concerns the meaning of § 941.30, a legal question that Bates litigated and lost in state court. He cannot obtain a second opinion on the meaning of state law through the maneuver of making a claim under *Jackson*. See *Jones v. Thieret*, 846 F.2d 457 (7th Cir.1988).

 *Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic: it is barbaric to imprison persons who no reasonable juror could think had committed a crime. Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be "insufficient" only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. See, e.g., *Garner v. Louisiana*, 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961) ("We of course are bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."); *Hebert v. Louisiana*, 272 U.S. 312, 316–17, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); *Patterson v. Colorado*, 205 U.S. 454, 459–61 (1907). A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). See also, e.g., *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.

 Consider four situations in which a defendant might say that the evidence is insufficient:

(1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

(2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.

(3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.

(4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant. E.g., *Martin v. Ohio*, 480 U.S. 228 [107 S.Ct. 1098, 94 L.Ed.2d 267] (1987).

Case 1 is what the Court contemplated in *Jackson*. The due process clause requires the state to prove, beyond a reasonable doubt, all of the elements of the offense it defines. When the state attempts to evade this obligation, the writ of habeas corpus will issue. (Even this is not perfectly clear, if the state does or could proscribe X and Y without Z, and the penalty imposed falls within the range for the X–Y crime. See *Cole v. Young*, 817 F.2d 412, 435–40 (7th Cir.1987) (dissenting opinion). Our case in-

volves no such problem, which we therefore do not pursue.)

■ Case 2, by contrast, presents a pure question of state law. *If* the state court is correct in its interpretation of the statute, then the evidence is sufficient; *whether* the state court correctly understands the law is a question beyond the reach of a federal court on collateral attack. E.g., *Jones v. Thieret; Garcia v. Perringer,* 878 F.2d 360, 362 (11th Cir.1989); *Holt v. Wyrick,* 649 F.2d 543, 547 (8th Cir.1981). But cf. *McGuire v. Estelle,* 902 F.2d 749 (9th Cir. 1990), rehearing denied, 919 F.2d 578 (1990), cert. granted, — U.S. —, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991). Case 3 is just a variant of case 2. What is essential to establish an element, like the question whether a given element is necessary, is a question of state law. To say that state law "rightly understood" requires proof of Z', and that the evidence is insufficient because the prosecution failed to establish this, is to use *Jackson* as a back door to review of questions of substantive law. Whenever courts consider that possibility expressly they reject claims that convictions should be reversed because state courts misunderstood or misapplied state law. E.g., *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 1257–58, 92 L.Ed. 1683 (1948). An equally firm rebuff is appropriate when the same claim appears in *Jackson*ian guise, we concluded in *Jones.* As for the fourth case: although the Constitution might forbid giving the defendant the burden of persuasion on a particular issue, see *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and might prevent the state from changing its law in a surprising way, see *Marks* and *Bouie,* it is distracting to call either of these potential difficulties an evidentiary shortfall. By the time the state court is done, it has been authoritatively established that the elements of the offense are X and Y alone; the constitutional question is whether the state *may* make X and Y alone criminal.

Bates does not deny that Wisconsin proved beyond a reasonable doubt that he fled from the police at 95 mph, forcing one car off the road and another into opposing lanes as their only alternative to collision. He does not doubt that Wisconsin may punish such acts consistent with the Constitution. He does not contend that eight years' imprisonment is cruel and unusual punishment for his deeds. Although he insists that behavior suitable only for the racetrack is neither "imminently" dangerous nor "depraved" unless done in rush hour in downtown Milwaukee, this is a legal argument rather than a factual one. It is a replay of our hypothetical Case 3, where Z' is "driving in a high-traffic area". The state court of appeals rejected Bates' argument on legal grounds. Where Bates' case stands between *Wagner* and *Balistreri* is a question for Wisconsin to decide.

AFFIRMED.