*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0111P (6th Cir.)
File Name: 02a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANNETTE SANFORD,
     *Petitioner-Appellee,*

    *v.*

JOAN YUKINS, Warden,
     *Respondent-Appellant.*

No. 00-2504

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 97-00255—Richard A. Enslen, District Judge.

Argued: June 14, 2001

Decided and Filed: April 4, 2002

Before: BOGGS and SUHRHEINRICH, Circuit Judges;
CLELAND, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Laura Graves Moody, OFFICE OF THE
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,
Lansing, Michigan, for Appellant. Paul L. Nelson,

---

[*]The Honorable Robert H. Cleland, United States District Judge for
the Eastern District of Michigan, sitting by designation.

FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellant. Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

## OPINION

———————————

CLELAND, District Judge.  In 1990, Petitioner Annette Sanford and a woman named Carolyn Wilson had been living together for several years, sharing a bedroom while jointly caring for a number of young children each had earlier borne. Among those children were Sanford's 9-year-old daughter Lori and Wilson's 11-year-old son Michael.  These two, as well as the other children living in the home, had been beaten and psychologically terrorized for some time by one or the other of the women.

In the instant case, Michael and Lori were forced to engage in sexual intercourse in Sanford and Wilson's bedroom while their mothers watched.  These squalid events unfolded over the course of perhaps twenty minutes, during which time Sanford left and returned with tea for her companion.  After this and other disturbing incidents of sexual abuse of the children came to light, both Sanford and Wilson were charged, tried, and convicted on two counts of first-degree criminal sexual conduct.  Following unsuccessful direct appeals, Sanford sought habeas review in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 2254.  Unable to locate any evidence in the record that Sanford had "assisted" or "encouraged" the principal offense, the district court determined that relief should be granted.  We disagree, and the award of habeas relief will be reversed.

sufficient evidence existed to support Petitioner's conviction was neither "contrary to clearly established Supreme Court precedent," *i.e.*, the sufficiency standard set forth in *Jackson v. Virginia*, nor an "unreasonable application" of that law. 28 U.S.C. § 2254(d). Indeed, the evidence supports a conclusion that Sanford was intentionally and knowingly present both before and during the assault, that she left and reappeared on the scene though knowing what was happening, and that she was physically and emotionally supportive of Wilson during Wilson's depraved manipulation of the children, providing sustenance and companionship during the events Wilson was orchestrating.

## V.  CONCLUSION

For these reasons, the district court's grant of habeas relief is REVERSED.

## I.  FACTUAL BACKGROUND

One evening, Wilson called Michael and Lori into the women's bedroom, one after the other. She directed Lori to disrobe, and when Lori refused, Wilson ordered Michael to remove Lori's clothes as well as his own, to get on top of her, and to "hump" her. After his mother pushed him on top of the younger child and threatened to beat him if he did not listen, Michael complied in fear. Lori initially began crying and tried to fight Michael off, but stopped when Wilson told her to "shut up." Both children testified that each of them often had been beaten by Sanford and Wilson with a leather belt and a pole from a canopy bed.

Sanford was present in the bedroom at the beginning and throughout most of the ordeal. According to Michael's testimony, she did nothing to stop the act, but did not encourage it either. Sanford also did not assist her daughter during the time that Lori was yelling for Michael to stop and trying to kick him away. Thus, when asked, Michael agreed that Sanford did nothing "other than be present." Lori's testimony essentially confirmed that Sanford was present in the bedroom but that she said and did nothing to encourage or stop the sexual activity. Lori recalled, however, that her mother at one point left the room and returned with some tea for Wilson.

## II.  PROCEDURAL HISTORY

Before jury deliberations commenced, Sanford moved for a directed verdict, arguing that no evidence was adduced against her other than her "mere presence" in the room while the act in question took place. The trial court denied the motion, stating,

Here we have a mother who has a duty, and I say it's a legal duty, to protect her child and stands idly by, if I am to believe the testimony of the children. . . . She had a duty to interfere, she had a duty to protect her child, she had a duty to take that child outside of that environment; and while the *Chapman* case said normally mere

presence isn't sufficient, but when you have a duty to act and you don't do so, then that may well be, because apparently you are telling the other person that they may go ahead in their criminal deed.

Further, in this case, inferentially, you can construe such conduct by a person as an act indicating agreement to the child that is involved in the activity, to convey to that child that the parent approves of the activity that is being forced upon the child. So I think you have a different situation when you have strangers as opposed to a parent-child, or husband and wife, and that being so in respect to her own child.

[T]he Court further finds that aid or encouragement transfers and is applicable . . . to Michael, in that if the parent of Lori had sought to interfere, that the act could not have been accomplished, at least it would have conveyed to Michael the objection of the parent of Lori, and that was not done.

Thus, after viewing the evidence in the light most favorable to the prosecution, the trial court denied Sanford's motion for a directed verdict. Following deliberations, the jury convicted Sanford on both counts of first-degree criminal sexual conduct. She subsequently was sentenced to concurrent terms of 10-40 years and 18-40 years.

Sanford appealed all her convictions[1] to the Michigan Court of Appeals. In addressing her arguments, the court set

---

[1]In March 1990, after a separate trial, Sanford was convicted of an additional count of first-degree criminal sexual conduct and one count of third-degree criminal sexual conduct. The evidence set forth in the March case established that Sanford, Wilson, or both, would, from time to time, open their home to male strangers, that the strangers would confer with the women privately in a back room, and that the men would then emerge to select one of the children of the household for vaginal or anal sex. It appears that evidence of these crimes was not introduced in the case under review here.

deference, we conclude that the state courts did not equate "silent presence" with "mere presence." Rather, there are strong indications that the state court considered intentional presence and emotional support as more than "mere presence." It is the state's prerogative to make such a determination without intrusion by the federal courts. Accordingly, the only question that should have been considered by the district court was whether any evidence supported the conclusion that Sanford's presence during the crimes alleged was, although silent, something beyond "mere presence"--was, indeed, assistance and encouragement.

### C. Sufficiency

We conclude that a jury easily could have concluded, beyond a reasonable doubt, that Sanford, despite her silence, rendered assistance and encouragement to co-defendant Wilson. First, the assault took place in Sanford's own bedroom, which she shared with Wilson. Second, Sanford was already present[3] in the bedroom when Wilson called the children into the room, thus supporting an inference that the decision to perpetrate the abuse had been jointly made. Third, Sanford appears to have been awake and fully aware from beginning to end, immediately present in what seems to have been a small room, watching the events unfold. Fourth, during the assault, Sanford left the room and returned with some tea for Wilson, who was explicitly orchestrating the rape. Finally, the record indicates that both Sanford and Wilson beat the children on a regular basis and that Sanford told Michael not to say anything about the things taking place at the house--"A fish doesn't get caught if he keeps his mouth shut."

Viewing this evidence in a light most favorable to the prosecution, we hold that the state court decision that

---

[3]The testimony of one of the children was equivocal on this point, indicating that Sanford may have been walking in at about the time of arrival of the children. The jury, however, could have relied on the other testimony indicating continued presence.

robbery, for example, may be silent throughout the commission of the crime but by his demeanor, or through behavior and acts not directly related to the crime, provide "moral support" that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than "mere" presence. *See, e.g., People v. Boswell*, No. 228359, 2001 WL 1464533 (Mich. Ct. App. Nov. 16, 2001) (concluding that "mere presence defense was highly implausible in light of defendant's involvement in the previous altercation and his close, albeit silent, presence while security guards were deliberately shot"); *see also People v. Palmer*, 220 N.W.2d 393 (Mich. 1974) (noting that aiding and abetting "includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary").

Although none of the state court opinions in this case expressly adopt this theory, it is reasonable to conclude that the Michigan courts were considering it when they affirmed Sanford's conviction. First, the court of appeals expressly stated that while mere presence is insufficient to prove aiding and abetting, it defined "aiding and abetting" as "*all* forms of assistance rendered to the perpetrator of a crime," including "all words *or deeds* that may support, encourage, or incite the commission of a crime." *Wilson*, 493 N.W.2d at 476 (emphasis added). This broad definition easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not "merely" present, but providing emotional encouragement and support. This is true particularly where, as here, the person present is the mother, and has beaten the victim in the past. That the Court of Appeals expressly upheld Sanford's conviction after defining the crime of aiding and abetting in this manner indicates that it did not equate "mere presence" with "silent presence." Similarly, when presented with notice that the district court was inclined to grant Sanford's petition for habeas relief, the Michigan Supreme Court nonetheless refused to address the certified question, reaffirming that it deemed the Michigan Court of Appeals's decision correct. Based upon these considerations, and giving appropriate

forth the following elements under Michigan law for a conviction of aiding and abetting:

> (1) the underlying crime was committed by either the defendant or some other person,
>
> (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime, and
>
> (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement.

*People v. Wilson*, 493 N.W.2d 471, 474 (Mich. Ct. App. 1993). The court further observed that

> Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor. The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime. It includes all words or deeds that may support, encourage, or incite the commission of a crime.

*Id*. at 476.

Finally, the court noted that "whether a parent has a duty to prevent the commission of a criminal act upon the parent's child where that crime takes place in the parent's presence, has not been previously addressed by this Court." *Id*. at 477. Nevertheless, the court found it unnecessary to further address the issue, concluding that "the prosecution introduced sufficient evidence that Sanford intended the commission of the crime." *Id*. In a footnote, the court "strongly encourage[d] the Legislature to consider the theory of culpability relied on by the trial court in this case: An exception to the 'mere presence' rule exists when a parent has a legal duty to prevent the commission of a crime." *Id*. at 477, n.7. The Michigan Supreme Court denied Sanford leave to appeal without comment.

Sanford subsequently sought habeas review in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 2254. The district court determined that relief should be granted, finding no evidence in the record to prove the second element of aiding and abetting, *i.e.*, that Sanford assisted or encouraged the principal offense. The district court opined that the lack of evidence in the record on that issue violated Sanford's Fourteenth Amendment right to due process of law as established in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (holding that an applicant is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

Rather than grant relief outright, however, the district court determined, in the interest of comity, to certify to the Michigan Supreme Court the following question:

> Whether Petitioner Sanford's silent presence during the offense, as described in the record . . ., constitutes "encouragement" or "assistance" of the offense so as to support her aiding and abetting conviction under state law. The Court views this question as including, but not limited to, the question of whether Sanford, as mother of one of the victims, "encouraged" the offense by failing to protect her daughter from the criminal conduct.

The Michigan Supreme Court declined the district court's request, noting (1) that "the matter was already resolved by the Michigan Court of Appeals" and (2) that "the evidence supported the jury's finding that petitioner aided and abetted first-degree criminal sexual conduct."

Subsequently, the district court granted Sanford's application for writ of habeas corpus because "the evidence of Sanford's silent presence . . . was insufficient under the doctrine of *Jackson v. Virginia* to support her convictions in that case for aiding and abetting as defined by state law." This appeal followed.

and that the evidence is insufficient because the prosecution failed to establish this, is to use *Jackson* as a back door to review of questions of substantive law. Whenever courts consider that possibility expressly[,] they reject claims that convictions should be reversed because state courts misunderstood or misapplied state law. An equally firm rebuff is appropriate when the same claim appears in *Jacksonian* guise.

*Bates*, 934 F.2d at 103.

Apparently relying on the testimony of both children that Sanford did not touch them or say anything, and their agreement that she was "merely present" during the relevant time period,[2] the district court concluded that Sanford's silent presence was insufficient under *Jackson v. Virginia* to support her convictions for aiding and abetting as defined by state law. Thus, the district court appears to have concluded that the second element for proving aiding and abetting--*i.e.*, that the defendant have given assistance or encouragement--required an overt act. This conclusion is error. "What is essential to establish an element, like the question whether a given element is necessary, is a question of state law." *Bates*, 934 F.2d at 103. Thus, under the "assistance or encouragement" prong of an aiding and abetting claim, whether "silent" presence is synonymous with "mere" presence and whether some overt act is required to prove encouragement is a determination that properly must be left to the state courts.

Moreover, we believe that the district court's equation of "mere presence" with "silent presence" is inherently flawed. An aider and abettor intentionally present during a bank

---

[2]Two points bear mentioning at this juncture: First, neither child actually *said* that Sanford was "merely present." Those were the words of a lawyer, inserted into leading questions with which the children agreed by responding "yes" or "no." Second, even though the prosecutor did not object, it remains clear that such testimony cannot be dispositive of this court's determination of "mere presence."

(4)  State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant.

*Id*. at 102 (internal citations omitted).

"Case 1" is the scenario relied upon by Sanford and the district court in this case as they conclude that, insofar as Sanford committed no overt acts, there was insufficient evidence to support her conviction. They point to the Michigan Court of Appeals's list of the three elements required to prove aiding and abetting--(1) commission of the underlying offense, (2) assistance or encouragement, and (3) intent that the offense be committed--combined with its statement that mere presence is not enough to establish the second element. *See Wilson*, 493 N.W.2d at 474, 476.

"Case 2," which implicates "a question beyond the reach of a federal court on collateral attack," *Bates*, 934 F.2d at 103, is the scenario relied upon by Appellant and the state trial court. They essentially argue that, where a duty to protect exists, there are only two elements: (1) commission of the underlying offense and (2) intent that the offence be committed. As discussed above, however, the district court properly refused to rely upon this theory, because the Michigan Court of Appeals affirmed Sanford's conviction on sufficiency grounds and not under the duty theory.

Thus, although neither party directly addresses it, we think that "Case 3" is the scenario most *apropos* to the facts currently before the court. As stated by the Seventh Circuit,

Case 3 is just a variant of case 2. What is essential to establish an element, like the question whether a given element is necessary, is a question of state law. To say that state law "rightly understood" requires proof of Z',

---

### III.  STANDARD OF REVIEW

This court reviews a district court's grant of a writ of habeas corpus *de novo*. *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). Thus, the grant of habeas relief may stand only if we conclude that the state court's adjudication of Sanford's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

### IV.  DISCUSSION

Appellant sets forth three reasons why this court should reverse the district court's grant of habeas relief. First, Appellant argues that Sanford's claim is not cognizable because it would require this court to interpret Michigan law differently than did the Michigan courts. Second, Appellant contends that the district court erred in holding that the state trial court had incorrectly applied Michigan law. Finally, Appellant argues that Sanford's conviction is supported by sufficient evidence, even if "mere presence" is insufficient under Michigan law to constitute aiding and abetting. For the reasons set forth below, we conclude that Sanford's claim is cognizable on federal habeas review, but that the district court erred in granting relief.

### A.  Appropriateness of Federal Review

Appellant asserts that the district court was precluded from reaching the merits of Sanford's petition because the trial court already had concluded, as a matter of state law, that in light of Sanford's duty to protect, mere presence was sufficient to establish aiding and abetting. Thus, Appellant contends that this is not a "sufficiency of the evidence" case, but simply a case in which the state court has determined that an overt act is not an element of the offense where a parent/child relationship exists.

The district court rejected this analysis based on the Michigan Court of Appeals's decision not to address the issue

of "whether a parent has a duty to prevent the commission of a criminal act upon the parent's child where the crime takes place in the parent's presence." *Wilson*, 493 N.W.2d at 477. Citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), the district court concluded that, "as the last reasoned decision," the appellate court's ruling on sufficiency grounds, and not the trial court's reliance on the duty theory, was the law that applied to the case. Thus, finding no evidence that Sanford had "assisted" or "encouraged" Wilson, the district thought itself compelled to grant Sanford habeas relief.

We agree that the habeas petition may not be dismissed based on the state trial court's conclusion that mere presence may be enough whenever a defendant has duty to act but does not. The Michigan Court of Appeals expressly refused to uphold this theory, referring the issue to the legislature instead. Rather, Sanford's conviction was upheld "because the prosecution introduced sufficient evidence that Sanford intended the commission of the crime." 493 N.W.2d at 477. Federal review of such a holding is a right protected under the Fourteenth Amendment of the Constitution. *Jackson*, 443 U.S. at 324. Accordingly, we reject Appellant's claim that Sanford's application is not cognizable in federal court.

## B. Applicable Law

We also conclude, however, that the district court misunderstood the proper relationship between the roles of the federal and state courts. The Supreme Court has cautioned that the sufficiency standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Id*. at 324 n.16 (emphasis added). In *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir. 1991), the United States Court of Appeals for the Seventh Circuit provided further guidance in this regard, distinguishing pure sufficiency claims from state law claims disguised as *Jackson* claims:

> *Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic: it is barbaric to imprison persons who no reasonable juror

could think had committed a crime. Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be "insufficient" only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. "A federal court may not issue the writ on the basis of a perceived error of state law." The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.

Consider four situations in which a defendant might say that the evidence is insufficient:

(1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

(2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.

(3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.