**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAYBE TORRES,

        Petitioner - Appellant,

    v.

RON LYTLE, Warden, Central New
Mexico Correctional Facility;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

        Respondents - Appellees.

No. 05-2103

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-02-1397 JH/LCS)**

Susan Dunleavy, Federal Public Defender, Albuquerque, New Mexico, for
Petitioner - Appellant.

Steven S. Suttle, Assistant Attorney General (Patricia A. Madrid, Attorney
General, and Arthur W. Pepin, Assistant Attorney General, on the brief), Santa
Fe, New Mexico, for Respondents - Appellees.

Before **LUCERO**, **HARTZ**, and **McCONNELL**, Circuit Judges.

**HARTZ**, Circuit Judge.

Laybe Torres was convicted in New Mexico state court on February 4, 2002, on a charge of retaliating against a witness. He unsuccessfully appealed his conviction in state court and has been denied habeas relief by the federal district court. In our view, however, his conviction must be set aside. Although Mr. Torres indisputably committed a reprehensible act, the State failed to introduce at trial sufficient evidence to establish an essential element of the offense. We therefore hold that he is entitled to a writ of habeas corpus.

In September 1997 Ralph Medina told law-enforcement authorities that he suspected that Laybe Torres had burned down one of his houses on September 1 and that he had observed Mr. Torres attempt to set fire to another of his houses on September 15. Mr. Medina received no response to the report of his suspicions regarding the arson; but with respect to the attempted arson, Mr. Torres was tried and convicted on July 27, 1999, on a misdemeanor charge of criminal damage to property. Mr. Medina testified at the trial. A few weeks later Mr Medina received an unsigned threatening letter postmarked August 19, 1999. Based on this letter Mr. Torres was convicted of retaliating against Mr. Medina for reporting the arson, and was sentenced to seven years' imprisonment. The statute under which Mr. Torres was convicted provides:

> Retaliation against a witness consists of any person knowingly engaging in conduct that causes bodily injury to another person or damage to the tangible property of another person, or threatening to do so, with the intent to retaliate against any person for any

-2-

information relating to the commission or possible commission of a *felony* offense . . . .

N.M. Stat. Ann. § 30-24-3(B) (emphasis added). The issue before us is whether the State produced sufficient evidence at trial to prove that Mr. Torres's letter (it is now undisputed that Mr. Torres was the author) was retaliation for Mr. Medina's providing information relating to a felony. Mr. Torres contends that the evidence showed only retaliation for Mr. Medina's report and testimony concerning the misdemeanor offense for which Mr. Torres was convicted. We agree. Even applying the deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA), *see* 28 U.S.C. § 2254(d), we conclude that the evidence was not sufficient.

**I.    TRIAL**

Only three witnesses were called at Mr. Torres's retaliation trial, all by the State. Mr. Medina testified that he had known Mr. Torres his entire life, but "got to know him a lot better from 1994 to 1997." Tr. at 7. In 1997 their relationship "started to change" after Mr. Medina's wife Ruby asked Mr. Torres and his brother not to come by their home (where they had a baby girl) late at night. *Id*. at 7-8. In July 1997 Mr. Torres had a confrontation with Mrs. Medina "and he left very angry." *Id*. at 8. Then, on September 1, 1997, one of two houses Mr. Medina owned on a parcel of property in Cordova, New Mexico, was destroyed by fire. He reported to the fire marshal and the police that he suspected

-3-

that Mr. Torres had started the fire, but he did not receive any help from them. On September 15, 1997, Mr. Medina "decided to stake out the houses." *Id*. at 11. While doing so, he witnessed an attempted arson on the other house, *id*. at 10, which he also reported to the police, again naming Mr. Torres as a suspect.

Mr. Medina further testified that he was called as a witness at Mr. Torres's trial for criminal damage to property and that Mr. Torres was found guilty. Shortly thereafter he received a threatening letter in the mail, postmarked August 19, 1999, from Tierra Amarilla, New Mexico. The two-page letter stated (with asteriks to replace particularly offensive language):

> Q-VO, ** RALPH!  **, No Good **.  Lying ** RAT!
> You better get the ** out of Cordova! or else you know
> what is going to happen to you!  No Good **, **, **,
> **, **, **, **.
> > SNMer
>
> And leave my Ruby Alone!  She doesn't even like you!
> She said that your **.  Leave my Ruby Alone, Because
> I"m going to ** if you don't.  I Am going to kill You!
>
> > Lieutenant
> > SNMer

R. Vol. I Doc. 10 Ex. E.

Mr. Medina testified that he "knew that it had to be Laybe Torres" who had sent the letter. Tr. at 14.

Q    How did you reach that conclusion?

A    Well, this is how Laybe talks when he used to hang around my house. This is the type of verbiage that he uses. The other

-4-

thing is that in 1997, he also called me a "rat". He passed by my house and he yelled out, "This is for you, Ralph, you fucking rata. You'd better stop smearing my name." So I remember him calling me a rata. I don't know anyone else in Tierra Amarilla who would have anything else against me. He mentioned my name, my wife's name, Ruby, and he is also asking me to leave Cordova, so I felt in my heart that whomever was burning my houses was trying to get me out of Cordova.

*Id*. at 14-15. He also testified that during that year he had not been a witness "in any other proceeding except in the Laybe Torres criminal damage and trespass case," *id*. at 15, and "had not had any confrontations with anyone else," *id*. at 16.

On cross-examination Mr. Medina was questioned again about why he thought Mr. Torres had written the letter:

Q       The letter contains no signature from Laybe, does it?

A       It does not contain a signature.

Q       There is no mention of his name.

A       There is no mention of his name.

Q       No where in this letter does it mention any testimony from a previous proceeding.

A       No.

Q       There is no mention of any events happening in 1997.

A       That is correct.

Q       There is no mention of a court proceeding happening in 1999 specifically.

A      It doesn't directly, but indirectly, as the victim in this case, I can read between the lines.

Q      But there is no—

A      —everything that you have asked me is in there.

Q      But nothing specific.

A      Not specifically, but reading between the lines and in my heart and what happened to me, it is clearly there.

*Id*. at 18.

Mr. Medina was also cross-examined about the circumstances under which he received the letter:

Q      Now, lets talk about specifically what happened at the Magistrate Court in August of 1999. You received this letter shortly [sic] you testified in a criminal proceeding at Magistrate Court in Rio Arriba County; is that correct?

A      Yes.

Q      And that court proceeding involved a misdemeanor charge of criminal damage to property; is that correct?

A      Yes.

Q      A misdemeanor charge for which you testified and for which Mr. Torres was convicted; is that correct?

A      Yes.

Q      That was a misdemeanor criminal damage to property charge; is that correct?

A      I am not very sure because I am not an attorney, but I believe that is what it was?

*Id*. at 19.

On redirect examination Mr. Medina was asked:

Q      Can you describe to this jury what you meant by saying, reading between the lines?

A      Well, I had just been in court with [Mr. Torres] a few weeks before and this says that the return address is to Ralph Medina and Ralph Medina is the person it was sent to and it came from Tierra Amarilla. The guy calls me a "rata". He had called me that before. He had a confrontation with my wife because I heard it and then my wife told him that she was going to---

[Defense Counsel]: Objection.

[Prosecutor]: Don't tell us what your wife said.

Q      ([Prosecutor]) Please continue

A      (The Witness) Okay. This person here in this letter wants me to get out of town, and then when I think about the fact that my house was burned down more than once, and because I believe that that criminal damage to property was not the whole story, I believe that that house was intended to be burned because I testified that Laybe had a container of some kind in his hands. He wants me to get out of town and he is going to kill me; I felt very intimidated all through this. So, that is what I meant. I just know in my heart that it was him.

*Id*. at 20-21.

The State's second witness was former state police officer Chris Sanchez, who testified about the investigation conducted after he received the letter from Mr. Medina. Mr. Medina had brought him the letter and told him that he thought that Mr. Torres had written it.

Q     Did he indicate to you why he believed that Laybe Torres was a suspect?

A     He had an altercation with Mr. Torres in the past where he was a suspect in an arson to his house.

*Id*. at 23. Mr. Sanchez also testified that Mr. Torres had been incarcerated at the Tierra Amarilla jail on the date the letter was sent, and that the meter stamp on the letter was "from the County Clerk's office." *Id*. at 24. He explained: "If an inmate at the jail does not have the money to purchase postage, the County provides postage for them, that is why they send all of the mail down through the County Clerk's office, and it is run through their meter." *Id*. He obtained a sample of Mr. Torres's handwriting and sent the sample and the threatening letter for analysis. He also testified that he did not have any contact with Mr. Torres, but "knew that Mr. Torres was a suspect in the arson." *Id*. at 26.

The State's final witness was a handwriting expert who testified that Mr. Torres had written the threatening letter. His testimony is not relevant to this appeal. Although Mr. Torres's authorship was heavily contested at trial, he no longer disputes writing the letter. No other witnesses testified.

The jury was instructed that to find Mr. Torres guilty the State had to prove beyond a reasonable doubt that he acted "with the intent to retaliate against Ralph Medina for providing any information to a law enforcement officer to the commission or possible commission of Arson." R. Vol. I Doc. 13 Ex. A (Instruction 3). The third element in the jury instruction on arson stated, "This

happened in New Mexico on or about the 1st of September, 1997." *Id*. (Instruction 4). The jury returned a guilty verdict, and Mr. Torres was sentenced to seven years' imprisonment. (We note that this was the second jury to find Mr. Torres guilty. The first conviction was overturned on appeal because evidence was improperly admitted. *See State v. Torres*, Case No. 21,920 (N.M. Ct. App. July 23, 2001). Testimony from the first trial referred to in the State's brief is irrelevant to this case.)

## II.   POSTCONVICTION PROCEEDINGS

Mr. Torres appealed the conviction to the New Mexico Court of Appeals (NMCA). The appeal was handled on that court's summary calendar, which is described in Docketing and Calendaring, available at http://coa.nmcourts.com/ courtinfo/sumryart.pdf. To summarize the calendar process, shortly after filing the notice of appeal the appellant submits to the court a docketing statement, which should set forth the procedural background of the case, the issues being raised on appeal, a list of pertinent legal authority (without argument), and a fair presentation of the pertinent evidence and proceedings below. A judge of the court, with assistance from staff attorneys, then reviews the docketing statement, together with the pleadings filed in the trial court, and decides whether (1) to set the case on the "general calendar" for submission of the record, full briefing, and oral argument, or (2) to attempt to dispose of the appeal on the summary calendar. If the second choice is selected, the judge, again with staff assistance, will send

the parties a "calendar notice" that sets forth a proposed disposition of each of the issues raised on appeal. Both parties are given an opportunity to respond, by providing legal argument and presenting factual information omitted or incorrectly stated in the calendar notice. The party prevailing on an issue, however, ordinarily does not submit a response on the issue. (One virtue of this system is that a prevailing appellee may not need to file anything with the court.) After reviewing the response, if any, the court may set the case on the general calendar (as, for example, when the parties dispute what the evidence was concerning a material issue); send out a further calendar notice refining or modifying the reasoning and conclusions in the previous notice; or, if it is convinced that the prior calendar notice was correct, file an opinion conforming to the prior notice. The process may go through several iterations, although it is rare for the court to issue more than three calendar notices. The court will not issue an opinion on the summary calendar that resolves an issue contrary to the most recent calendar notice.

Mr. Torres's docketing statement raised two issues, one of which was whether the evidence was sufficient to support the verdict.[1]  The docketing

[1]The other issue raised, which is not raised on this appeal, was whether the district court erred in denying Mr. Torres's posttrial motion for a directed verdict "based upon the fact that the statute requires that the alleged retaliation be based on the commission or possible commission of a felony offense."  R. Doc. 10 Ex. C at 6.  The docketing statement states that Mr. Torres argued to the trial court that

> it was necessary for the State to prove that the Defendant had retaliated against Ralph Medina for the commission or possible commission of a felony.  The Defendant argued that by Mr. Medina's own testimony, the Defendant was retaliating against him for his testimony in Rio Arriba Magistrate Court, concerning the misdemeanor charge of Criminal Damage to Property . . . .  The Defendant argued that there existed no felony upon which the charges could be based.  More specifically, the Defendant argued that the State had failed to establish sufficient proof of a nexus between the uncharged crimes which Medina suspected the Defendant to have committed on September 1, 1997 and the letter written in July 1999. . . .  There was no testimony at trial by law enforcement as to any possible felony for which the Defendant was being investigated or charged. . . .  Accordingly, the Defense argued that there was no evidence that the letter was sent for any other reason than Medina's testimony at [the misdemeanor] trial.

*Id*. at 5.  The calendar notice proposing summary affirmance agreed with Mr. Torres "that an essential element of the crime of retaliation against a witness is that the retaliation must be threatened for 'information relating to the commission or possible commission of a felony offense,'" *id*. Ex. D at 2, but noted that the jury had been required to make such a finding.  To the extent that Mr. Torres argued that "he could not be convicted of retaliating against a witness as a matter of law because he was never charged with a felony offense" the calendar notice disagreed.  *Id*. at 2 (citing *State v. Perea*, 992 P.2d 276 (N.M. Ct. App. 1999).  In its opinion resolving the appeal, the court stated, "Defendant argues there was no evidence that he was ever investigated, tried, or convicted of a felony offense.  There is no such requirement.  The requirement is that the witness informed authorities about the possible commission of a felony offense."  *Id*. Ex. F at 1 (internal citations omitted).

-11-

statement sets forth the evidence at trial in four paragraphs:

Essentially, the facts of this case, as set forth at trial, are as follows: Ralph Medina testified that on September 1, 1997, a house belonging to him was destroyed by fire. Although Medina testified that he suspected that the Defendant had started the fire, the Defendant Laybe Torres was never charged with any crime, nor was evidence presented that he was a suspect, concerning this September 1, 1997 incident. Medina further testified that on September 15, 1997 someone attempted to burn a second house which belonged to him. As a result of the September 15, 1997 incident, and the resulting damage, the Defendant was charged in Rio Arriba County Magistrate Court with one (1) count of Criminal Damage to Property under $1,000, a misdemeanor. No felony charges were ever filed against the Defendant concerning either of these incidents, nor was it ever established at this trial that the Defendant was a suspect in any felony investigation as a result of either incident. On July 27, 1999, the Defendant was convicted in Rio Arriba Magistrate Court for the misdemeanor crime of Criminal Damage to Property, under $1000.00, for damages he caused to Medina's property on September 15, 1997.

On or about August 19, 1999, following the Magistrate Court trial and conviction, Ralph Medina received a letter which contained, among other insults and derogatory language, a death threat. The letter was unsigned. The envelope in which this letter was sent was post-marked July 29, 1999 from Tierra Amarilla, New Mexico. Upon receipt of this letter, Ralph Medina reported to the State Police he was being threatened by the Defendant Laybe Torres. Medina reported to the police that the letter was threatening him for "stuff" in the past. Medina went on to report that he felt that the letter was sent to him in retaliation for his testimony against the Defendant in a previous case, for which Mr. Torres was convicted and incarcerated. No evidence was presented at trial that Medina had testified against the Defendant in any other judicial proceeding except the Magistrate Court trial.

It should be noted that at trial there was no testimony as to any threatening behavior by the Defendant towards Medina from the date of the second incident on September 15, 1997 until after the Rio Arriba Magistrate Court trial on July 27, 1999, a period of time of

almost two (2) years.  Furthermore, Medina was unaware of any other proceedings against the Defendant and did not testify against the Defendant in any other proceeding prior to the Rio Arriba Magistrate Court trial on July 27, 1999.

. . .

At trial the State called two (2) witnesses in their case against the Defendant Laybe Torres.  Most important to this appeal was Ralph Medina, the recipient of the letter which is alleged to have been written by Mr. Torres, as well as the victim of the single count of Criminal Damage to Property under $1000.00, for which the Defendant was convicted in Magistrate Court.  Medina confirmed that he had indeed received the letter following the Magistrate Court trial and felt the letter was in retaliation for his testimony at this trial.  Medina made no other mention of threatening or retaliatory behavior prior to the receipt of the letter following the Magistrate Court trial.  The State did not call any law enforcement officers as witnesses at trial.  The only other witness for the State was a hand writing expert.

R. Doc. 10 Ex. C at 2-4.[2]

The calendar notice proposed affirmance on the insufficient-evidence

claim, explaining:

It appears Medina testified that he told law enforcement officers that he believed Defendant was responsible for burning one house that belonged to Medina on September 1, 1997, and for attempting to set fire to a second dwelling, also belonging to Medina, on September 15, 1997.  It further appears there was evidence that Defendant sent Medina a letter threatening Medina with death.  We propose to hold that this evidence was sufficient to convict Defendant.  We propose to infer that the jury could have determined

_____

[2]Mr. Torres's docketing statement is inaccurate in several respects.  For example, it states that "the State called two (2) witnesses in their case against the Defendant Laybe Torres," R. Doc. 10 Ex. C at 4, and that "[t]he State did not call any law enforcement officers as witnesses at trial," *id*.  But, as noted above, three witnesses were called, one of whom was a former law-enforcement officer.

-13-

from reading the letter that Defendant intended to retaliate against Medina for giving information relating to the burning of the first house. . . .

It appears Medina testified that he thought the letter was in retaliation for his testimony in Defendant's misdemeanor trial. We propose to hold the jury could decide for itself what Defendant intended by the letter and was not limited to Medina's interpretation.

*Id*. Ex. D at 4-5 (internal citations omitted).

Mr. Torres submitted a response to the proposed disposition, again contending that all the evidence at trial indicated that the letter was motivated by Mr. Medina's testimony at the misdemeanor property-damage trial, which resulted from the September 15 attempted arson, and that "the State had failed to establish any relationship between the arson that Medina suspected Mr. Torres to have committed on September 1, 1997, and the retaliatory letter that Medina received on August 19, 1999." *Id*. Ex. E at 3. The threatening letter was attached to this response. The court rejected the argument and affirmed the conviction. The New Mexico Supreme Court denied Mr. Torres's petition for a writ of certiorari.

On November 5, 2002, Mr. Torres filed in the United States District Court for the District of New Mexico an application for habeas corpus relief under 28 U.S.C. § 2254, again contending that there was insufficient evidence to sustain his conviction. In a recommended disposition, a magistrate judge determined that the New Mexico Court of Appeals had addressed this issue on the merits, mandating that the deferential standard of review set forth in AEDPA be applied,

*see* 28 U.S.C. § 2254(d), and concluded that the NMCA's "determination of the sufficiency of the evidence was not objectively unreasonable." R. Doc. 14 at 7. The district court issued an order adopting the magistrate judge's recommendation. Mr. Torres filed a notice of appeal and we granted a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c) (requiring § 2254 applicant to obtain COA to pursue appeal).

On appeal we noted that because the case was decided on the NMCA's summary calendar, no review of the trial record had taken place and the only facts in the record before us were those in Mr. Torres's docketing statement and subsequent pleadings. As the record then stood, we were not convinced that the conviction was supported by sufficient evidence. We stated:

> [N]one of the evidence presented at trial . . . points toward retaliation for the 1997 arson report (as opposed to the 1999 property damage testimony). Indeed, according to Mr. Torres, there was no evidence that he even knew about that report. The threatening letter itself seems at least partially motivated by a quarrel over a woman named Ruby, and even to the extent it does seem to be in retaliation for giving information, it makes no reference to the September 1 arson report. It was sent two days after Mr. Medina's testimony in the misdemeanor trial involving the September 15 incident, and about two years after Mr. Medina's report to the police regarding the September 1 alleged arson. Furthermore, Mr. Medina admitted that in the two years between his arson report and his testimony in the misdemeanor trial, Mr. Torres took no retaliatory action against him. Indeed, Mr. Medina testified that he believed the letter was sent in retaliation for his testimony at the misdemeanor trial. The timing of the letter tends to confirm that theory.

-15-

*Id*. at 290-91. We concluded that "[t]he only way to tell whether there was evidence before the jury suggesting that Mr. Torres knew about the 1997 arson report is to do what no reviewing court to date has done: review the actual record from the retaliation trial." *Id*. at 291-92. We therefore vacated the district court's order and remanded for further consideration.

On remand the magistrate judge reviewed the transcript of Mr. Torres's trial and again recommended, under AEDPA's deferential standard, that the habeas application be denied. The district court adopted the magistrate's recommendation, and also denied a COA. Mr. Torres again requests a COA from this court. We grant it,[3] and hold that, even under AEDPA's deferential standard, the habeas application should be granted.

## III.   DISCUSSION

### A.      Standard of Review

AEDPA provides:

---

[3]A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id*. As we conclude that Mr. Torres is correct on the merits of this appeal, it is obvious that he has met the lesser showing necessary to obtain a COA.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, we grant relief only "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Under the "unreasonable application" clause, relief is provided only "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (internal brackets omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). When the claim was not decided on the merits by the state court, and it is not procedurally barred, we address it de novo. *Id*. at 1196.

In our prior order remanding this case to the district court, we held that AEDPA required deference to the NMCA decision. And because the issue of sufficient evidence "was primarily a legal one[,] . . . the appropriate standard of deference forbids us from granting relief unless the NMCA's adjudication

-17-

'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Torres v. Lytle*, 90 F. App'x 288, 290 n.1 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(1)). Mr. Torres contends that we should not apply that deferential standard on this appeal "because the NMCA addressed a different question [from] the one now before this Court. The NMCA determined whether the docketing statement contained sufficient evidence; this Court must decide whether the trial transcript, which the NMCA never reviewed, . . . contains sufficient evidence." Aplt. Br. at 21-22. The State counters that the law-of-the-case doctrine should apply, because a panel of this court has already determined that the insufficient-evidence claim was addressed on the merits by the NMCA and that our standard of review must therefore be deferential.

There is some truth in both positions. To the extent that we limit our review to the facts as presented to the NMCA, we must grant AEDPA deference to that court's decision. But when we consider any additional material facts from the trial transcript that were not placed before the NMCA, we should not defer. We have held that after a federal-court evidentiary hearing, we no longer defer to the state court's decision. *See Bryan v. Mullin*, 335 F.3d 1207, 1215-16 (10th Cir. 2003) (en banc) (declining to apply AEDPA deference after federal district court evidentiary hearing when state court had denied evidentiary hearing). After all, when new evidence is produced during federal habeas proceedings, what the state

court decided (the merits of a legal issue based on the factual record before it) is different from what the federal court must decide (the merits of the same legal issue but based on a materially different factual record). In this case, the factual record before the state appellate court consisted of the representations made by Mr. Torres in his docketing statement and subsequent appellate pleadings. Although ordinarily we would review Mr. Torres's habeas claim on that same record and give the state court's ruling the usual AEDPA deference, we are now considering the trial transcript, which was not presented to the NMCA. Accordingly, we may not be deciding the same legal issue decided by the NMCA, at least if the trial transcript provides substantial evidence not in Mr. Torres's pleadings with the NMCA; and in that circumstance AEDPA deference would be inappropriate. In sum, by remanding to the district court for consideration of the trial transcript, we created the possibility that new evidence would be presented that was not before the NMCA. This new evidence could change the legal issue presented to us in this second appeal; and, although we applied AEDPA deference on the first appeal, it is not clear that we should continue to apply it now.

We emphasize that our manner of proceeding has neither prejudiced the State nor failed to show the respect we owe to a state court. As our opinion in Mr. Torres's first appeal strongly suggested, we could have decided that the NMCA's decision was not reasonable based on the record before that court and granted Mr. Torres habeas relief. By remanding to the district court for

-19-

consideration of the trial transcript, we gave the State an additional opportunity to show that Mr. Torres had been properly convicted, if it could point to previously unconsidered trial evidence of guilt. Such "new" evidence, however, would not have been considered by the NMCA, so we could not know how that court would have evaluated it. We would be deciding a different sufficiency-of-the-evidence issue from what the NMCA decided, so AEDPA deference would be inappropriate.

Nor was the remand unfair to Mr. Torres. It was an appropriate step because under New Mexico's unique calendaring system, the State could not have been expected to supplement the state appellate record with trial evidence supporting the verdict that may have been omitted from Mr. Torres's docketing statement. So long as the NMCA's calendar notices were indicating that it would affirm the conviction, there was no reason for the State's attorneys to pay significant attention to the appeal, much less file pleadings suggesting that its position was even stronger than the court thought. There would be plenty of time and opportunity to present its best case if the court set the appeal on the general calendar for full briefing and oral argument or issued a calendar notice proposing reversal. Our remand thus gave the State its first true opportunity to point to trial evidence of Mr. Torres's guilt not presented to the NMCA.

In any event, after reviewing the trial transcript we conclude that it adds nothing of significance to Mr. Torres's docketing statement. We are therefore

deciding the same issue as that decided by the NMCA and give AEDPA deference to the state court's decision.

The Supreme Court has stated that evidence of guilt is sufficient if "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, when we review a state-court adjudication of a legal issue, we decide whether the state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The issue before us, then, is whether the NMCA reasonably decided that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. On Mr. Torres's first appeal we described this evaluation of what a reasonable jurist could have decided about a reasonable juror as "deference squared," *Torres*, 90 F. App'x. at 290.

**B.    Merits**

Even under AEDPA's exponential deference, we conclude that the evidence was not sufficient to convict Mr. Torres of retaliating against Mr. Medina for reporting the September 1, 1997, arson. First, as we stated on the first appeal, "there was no evidence that [Mr. Torres] even knew about that report." *Id*. Mr. Medina testified that he reported the September 1 incident, but that he did not receive any help from the authorities. No evidence was presented to the jury that

-21-

Mr. Torres was ever questioned by the police about the incident, or that Mr. Medina told Mr. Torres that he had reported the incident to the police.

To be sure, Mr. Torres may have learned during the misdemeanor property-damage trial about such a report. In the prior appeal the State asserted the "'critical fact'" that the letter was sent "'just two days after Torres heard Medina testify under oath that he told police he believed Medina was responsible for the September 1, 1997, arson.'" *Id*. at 291. At that time we stated: "If the jury heard evidence that Mr. Torres discovered the arson report at the misdemeanor trial or in preparation for it, there would be sufficient evidence to sustain the jury's verdict. But we see no evidence in this record for the [State's] 'critical fact.'" *Id*. The trial transcript confirms that this "critical fact" was not made known to the jury at the second retaliation trial.

Apparently conceding its error, the State does not repeat that argument on this appeal. Instead, it argues that "[i]t is reasonable to infer from [Mr. Medina's] testimony to the felony jury that he also testified similarly before the misdemeanor jury, to explain why he was watching his second house on the night he witnessed Torres commit the criminal damage." Aplee. Br. at 29. But there was no evidentiary basis for such an inference. As we said in *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995):

> While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable . . . . A jury will not be allowed to

engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence.

(internal quotation marks, citations, and brackets omitted)).

The State also notes that Mr. Medina testified that in 1997 Mr. Torres "passed by my house and he yelled out, 'This is for you, Ralph, you fucking rata. You'd better stop smearing my name.'" Tr. at 15. But we fail to see how this outburst could show that Mr. Torres knew that Mr. Medina had accused him of the September 1 arson, particularly when the outburst can be fully explained by the report of the September 15 incident; and the record does not even show that the outburst occurred after September 1.

Nor does the letter itself suggest that the threat was based on Mr. Medina's report of the September 1 arson. As we noted in our prior decision, the "letter itself seems at least partially motivated by a quarrel over a woman named Ruby, and even to the extent it does seem to be in retaliation for giving information, it makes no reference to the September 1 arson report." *Torres*, 90 F. App'x at 290. The timing of the letter—shortly after Mr. Medina testified at the misdemeanor trial, and two years after Mr. Medina had reported the arson (without there having been any suggestion of retaliation for almost two years)—further undermines any claim that a juror could reasonably infer, in the absence of any supporting evidence, that the letter was retaliation for the arson report. In rejecting Mr. Torres's appeal, the NMCA stated: "We asked for a copy of the letter to

-23-

determine if the wording of the letter made it clear that retaliation was threatened only for Medina's testimony at Defendant's misdemeanor hearing. The letter contains no such restriction." R. Doc. 10 Ex. F at 2-3. This statement is, to say the least, puzzling. The prosecution cannot establish the existence of an element of an offense by merely pointing to the defendant's failure to produce evidence of its nonexistence.

Finally, not even Mr. Medina stated that the letter was sent in retaliation for his report of the September 1 arson. To the extent that he imputed any motive to Mr. Torres in sending the letter, it was that it was sent in retaliation for his testimony at the misdemeanor trial. Mr. Torres pointed this out to the NMCA, which responded that "[t]he jury did not have to accept Medina's evaluation of the situation . . . . It was the jury's job to consider all of the evidence, including evidence that Medina had told police he thought Defendant burned down Medina's house, and the threatening letter itself . . . , and decide what the facts were." *Id*. Ex. F at 2 (internal citation omitted). But Mr. Medina's report to the police is irrelevant in the absence of evidence that Mr. Torres was aware of it. And, as already noted, the letter itself contains no information that could lead a jury to infer that it was sent in retaliation for the arson report of nearly two years before. As stated in our prior order, "We do not dispute that the jury could disagree with Mr. Medina's explanation, but it could do so only on the basis of evidence." *Torres*, 90 F. App'x at 291. Mr. Medina's vague testimony that "I

-24-

believe the criminal damage to property was not the whole story," Tr. at 21, hardly suffices for proof beyond a reasonable doubt that the letter was motivated by the arson report.

## IV. CONCLUSION

We GRANT a COA and conclude that the NMCA's denial of Mr. Torres's appeal "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)). We therefore REVERSE and REMAND to the district court with instructions to grant Mr. Torres's application for habeas relief under 28 U.S.C. § 2254.